IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| TOMMY WAYNE HARRIS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | 1:13CV268 |
| W. DAVID GUICE, MS. PAULA SMITH, LIEUTENANT LEWIS SMITH, J. GODFREY, SAMI HASSAN, and BILLIE MARTIN, | ) | |
| Defendants. | ) | |

RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on a Motion to Dismiss [Doc. #22] filed by Defendant Sami Hassan, as well as a Motion to Dismiss [Doc. #31] filed by Defendants Paula Smith, M.D., and Lewis Smith. Plaintiff Tommy Harris, proceeding *pro se*, has been advised of his right to respond to both motions and has filed a Response [Doc. #36]. For the reasons set out below, the Court recommends that Defendant Hassan's Motion to Dismiss be denied, but that the Motion to Dismiss filed by Defendants Paula Smith and Lewis Smith be granted.

I.      FACTS, CLAIMS, AND PROCEDURAL HISTORY

Plaintiff Harris is a North Carolina inmate and his allegations in this action filed pursuant to 42 U.S.C. § 1983 pertain to the period of time that he was incarcerated at the Albemarle Correctional Institution. He alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by showing deliberate indifference to his serious medical needs. Plaintiff Harris names Defendants in their official and individual capacities. He seeks declaratory and injunctive relief in addition to damages.

Plaintiff Harris names as Defendants W. David Guice, the Commissioner of Corrections; Dr. Paula Smith, section chief for medical services in the Department of Public Safety; Lewis Smith, the correctional administrator for Albemarle Correctional Institution; J. Godfrey, the assistant superintendent of programs for Albemarle Correctional Institution; Dr. Sami Hassan, the physician at Albemarle Correctional Institution; and Billie Martin, the nursing supervisor at Albemarle Correctional Institution.[1]

Plaintiff alleges that on February 26, 2011, he was taken to the medical department at Albemarle Correctional Institution ("Albemarle CI"), for a "serious bite wound." (Am. Compl. [Doc. #3] at 3.) According to Plaintiff, Nurse Honeycutt "commented that the finger looked broken and was given wipes and escorted to segregation." (Id.) Plaintiff alleges that Defendant Hassan, the staff physician at Albemarle, "failed to show for two weeks, causing an infection to set in." (Id. at 4.) Plaintiff says that his right index finger turned black and "swelling caused the nail to burst at the ends." (Id.) He further says that antibiotics were ordered but no x-rays. Finally, Plaintiff says that "he," apparently referring to Dr. Hassan, put in a request that Plaintiff be seen by an orthopaedist.

Plaintiff alleges that on March 9, 2011, the same inmate that bit his right index finger attacked him again. Plaintiff says that the inmate used a coffee mug filled with soap to attack Plaintiff on his right temple, causing blurred vision and headaches. Plaintiff states that Dr. Hassan "waived a flashlight in front of [Plaintiff's] face and informed [Plaintiff] there was no damage seen."

---

[1] Defendants Godfrey and Guice have filed an Answer [Doc. #21] but have not filed a separate Motion to Dismiss. It does not appear that Defendant Martin has been served. Therefore, the case is presently before the Court only as to Defendants Paula Smith, Lewis Smith, and Sami Hassan.

Plaintiff further states that on April 6, 2011, he saw Dr. Benedict, the orthopaedist at Central Prison, who was "puzzled as to why this injury was not taken care of when it was first discovered" and said that now Plaintiff's finger "would need to heal on its own." Plaintiff alleges that he saw Dr. Benedict again on May 18, 2011, and Dr. Benedict "said that the joint was destroyed and that a bone fusion and possible bone graft would need to be done." (Id.) Plaintiff had the bone fusion procedure done on July 26, 2011, and a screw was placed into his finger. Plaintiff says that he experienced "extreme pain" after his "medications wore off." (Id.) Dr. Hassan ordered x-rays on October 24, 2011, which Plaintiff alleges showed "damage done to the finger." (Id. at 5.)

Plaintiff states that on December 14, 2011, he was sent to Central Prison to have the screw removed by Dr. Benedict. However, Dr. Benedict was not there and another doctor was filling in for him. X-rays were performed and a physician's assistant, C. Grant, attempted to remove the screw from Plaintiff's finger. However, this procedure went awry, and Plaintiff's finger was broken again.[2] More x-rays showed his finger was broken. Plaintiff says that he was taken back to Albemarle without anything else being done for his broken finger. At Albemarle, the "medical staff initially acted indifferent, but [Plaintiff] was given ibuprofen and was to see Dr. Hassan the next day." (Id. at 6.)

Plaintiff alleges that the next day, Dr. Hassan checked Plaintiff's chart but initially refused to examine Plaintiff's finger and told Plaintiff to "get out." Plaintiff alleges that a nurse then

---

[2] According to Plaintiff, the Physician's Assistant said he would remove the "pin" and attempted to remove the screw with a "set of hemostats." Plaintiff alleges that he tried to explain that it was a screw, not a pin, but the Physician's Assistant "proceeded to the maintanence [sic] tool cart and remove[d] a pair of channel-lock pliers, and without sterilization, attempted to remove the screw from [Plaintiff's] finger. Halfway out, the finger broke sideways." (Compl. at ¶ 18-19.)

-3-

explained the circumstances and Dr. Hassan asked to see Plaintiff's x-rays from the previous day. Four weeks later, on January 11, 2012, Plaintiff was sent back to Central Prison to be seen by Dr. Summers. X-rays showed that a "triangle piece of bone" was missing from Plaintiff's finger, and it would require another bone fusion, graft, and screw. Plaintiff says that on June 15, 2012, he was sent to Duke University Hospital for his second surgery to repair his finger, and a permanent pin was inserted. On July 16, 2012, he was sent back to Central Prison for a follow-up examination. He saw Dr. Sharon, who examined Plaintiff's hand and diagnosed nerve damage. On September 10, 2012, Plaintiff was sent again to see Dr. Sharon at Central Prison, who confirmed nerve damage and "put in to see a Dr. Price at Duke University Hospital." (Id. at 6-7.)

II.     DISCUSSION

   A.     Rule 12(b)(6) Standard

A plaintiff fails to state a claim on which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). With that standard in mind, courts construe a pro se complaint liberally and accept as true all factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

   B.     Eighth Amendment Standard

Plaintiff claims that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment with regard to the medical treatment he received while incarcerated. To show a violation of the Eighth Amendment based on a failure to provide

adequate medical care, Plaintiff must establish that the defendant acted with "deliberate indifference" to his "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976); Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). The "serious medical need" component is objective and is a medical need that has been diagnosed by a physician as requiring treatment or one that is so obvious that even a non-physician would recognize the need for a doctor's attention. Iko, 535 F.3d at 241. The deliberate indifference component is judged subjectively, meaning that the defendant knew of and disregarded the risk posed by the serious medical need. Id. To have been deliberately indifferent, the defendant must actually know of the risk of harm to the inmate, and must also have known that his actions were insufficient to mitigate the risk of harm to the plaintiff arising from his serious medical need. Id. "'[D]eliberate indifference in this context lies somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law. Nevertheless, even under this subjective standard, a prison official cannot hide behind an excuse that he was unaware of a risk, no matter how obvious.' This is because even a subjective standard may be proven with circumstantial evidence." Makdessi v. Fields, -- F. 3d --, 2015 WL 1062747 (4th Cir. March 12, 2015) (quoting Brice v. Virginia Beach Corr. Ctr., 58 F. 3d 101, 105 (4th Cir. 1995)).

  C. Dr. Hassan's Motion to Dismiss

Dr. Hassan has moved to dismiss the Complaint, contending that Plaintiff has failed to state a claim under the standards set out above. With respect to Dr. Hassan, Plaintiff alleges that on February 26, 2011, he was seen at the medical department, apparently of Albemarle Correctional Institution, "with his right index finger turned at a right angle, which resulted from a serious bite wound." (Am. Compl. ¶ 11.) Plaintiff says that he saw Nurse Honeycutt in the

medical department, who "commented that the finger looked broken." (Id. ¶ 11.) He further alleges that his finger was not treated further, that he was not given antibiotics or x-rays, that he was sent from the medical department to segregation, and that "Dr. Hassan, staff physician at Albemarle Correctional, failed to show for two weeks, causing an infection to set in." (Id. ¶ 12.) Plaintiff's finger turned black, and swelling caused it to "burst at the ends." (Id.) Apparently, Plaintiff saw Dr. Hassan after these two weeks, on a date not specified, and Dr. Hassan subsequently ordered antibiotics, but did not order x-rays, and put in a request for Plaintiff to see an orthopaedist, although Plaintiff was not seen by the orthopeadist for another month.

Dr. Hassan does not argue that the medical condition allegedly observed by Nurse Honeycutt on February 26, 2011, was not an objectively serious medical condition. Indeed, a finger "turned at a right angle," which the nurse recognized as "looking broken," as a result of a human bite wound, is a condition that is so obvious that even a non-physician would recognize the need for a doctor's attention. See Iko, 535 F.3d at 241. Likewise, the alleged condition two weeks later when the finger was black and "bursting open" due to an infection would also be a condition for which even a non-physician would recognize the need for further medical care. Similarly, Plaintiff's allegations would support the conclusion that he was suffering from a serious medical condition on December 14 and 15, 2011, after his finger was re-broken when the physician's assistant attempted to remove the screw. Therefore, Plaintiff has sufficiently alleged the objective element of an Eighth Amendment violation.

Whether Plaintiff has sufficiently alleged facts from which the Court may draw the inference that Dr. Hassan was deliberately indifferent to that need is a closer question. Dr. Hassan points out that Plaintiff has not alleged that he was on duty on February 26, 2011, or

during the two weeks thereafter. While true, Plaintiff does allege that Dr. Hassan is the staff physician at Albemarle, that Plaintiff was seen by Nurse Honeycutt in the medical department before he was escorted to segregation, and that Dr. Hassan "failed to show for two weeks." Plaintiff does not mention any other physician at Albemarle that might have been on duty during this time period. The Court construes Plaintiff's pro se Complaint liberally as alleging that Dr. Hassan was responsible for providing medical care at Albemarle, that he knew of Plaintiff's condition through Nurse Honeycutt, that he failed to provide any care for two weeks while Plaintiff was in segregation, and that when he did treat Plaintiff, he provided antibiotics for the infection that had set in while Plaintiff was in segregation, but still did not order x-rays and did not provide treatment for the break for another month, until Plaintiff was finally sent to an orthopaedist. In addition, Plaintiff also alleges that in December 2012, after his finger was re-broken by the physician's assistant's attempt to remove the screw, Dr. Hassan refused to examine him and told him to "get out." After the nurse provided additional information regarding the events of the previous day, Dr. Hassan reviewed the x-rays, but Plaintiff still was not taken to see the orthopaedist again until several weeks later. The Court finds that although the allegations are not a model of clarity, discovery is necessary and appropriate with respect to Plaintiff's claims. Therefore, Dr. Hassan's Motion to Dismiss will be denied.

D.      Dr. Paula Smith and Lieutenant Smith's Motion to Dismiss

Defendants Paula Smith and Lieutenant Lewis Smith also move to dismiss all claims against them pursuant to Rule 12(b)(6). They point out that Plaintiff does not make any allegations specifically against them in his Amended Complaint. The Amended Complaint simply identifies them as supervisors in their respective areas of expertise. Defendant Paula

Smith is identified as the section chief for medical services for the North Carolina Department of Public Safety, and Lieutenant Smith is alleged to be a correctional administrator at Albemarle Correctional Institute. (Am. Compl. [Doc. #3] ¶¶ 5, 6.)

Because both of these Defendants are state employees, this action against them in their official capacities is a suit against the State of North Carolina. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). State officials sued in their official capacity for anything except prospective injunctive relief are not "persons" under section 1983 and are immune from suit under the Eleventh Amendment. Id. Therefore, Plaintiff may not assert any such claims against these Defendants. Plaintiff does request injunctive relief that would require officials to revise their medical care policies for all inmates in the Division of Prisons. However, Plaintiff has not made any allegations regarding statewide prison medical policies, and instead he recounts only his own personal experiences. In addition, the Court notes that Plaintiff is no longer housed at Albemarle CI. (See Plaintiff's Notice of Change of Address [Doc. #18].) Therefore, any request for injunctive relief specific to Albemarle CI is moot. As a result of all of these considerations, the official capacity claims against Defendants Paula Smith and Lewis Smith should be dismissed.

With respect to the claims against these Defendants in their individual capacities, Plaintiff may not rely upon the theory of respondeat superior to hold these supervisors liable because respondeat superior does not apply in section 1983 actions. Clark v. Maryland Dep't of Public Safety and Corr. Servs., 316 F. App'x 279, 282 (4th Cir. 2009) ("[P]rinciples of respondeat superior have no application to § 1983 actions."). Supervisory liability is applicable in section 1983 actions, but only if (1) the supervisor had actual or constructive knowledge that

a subordinate was involved in conduct posing an unreasonable risk of constitutional injury, (2) the supervisor's response showed deliberate indifference or tacit authorization of the practice, and (3) there was an affirmative causal link between the supervisor's inaction and the constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (setting out elements of supervisory liability). In this case, Plaintiff has not alleged facts from which the Court could infer that Defendants Paula Smith and Lewis Smith had such knowledge; nor has he alleged facts to establish an inadequate response by these Defendants or that their response caused the injury. Other than describing their positions, he has not asserted any facts at all as to these Defendants. Therefore, all claims against Defendants Paula Smith and Lewis Smith should be dismissed.

IT IS THEREFORE RECOMMENDED that the Motion to Dismiss filed by Defendant Hassan [Doc. #22] be denied.

IT IS FURTHER RECOMMENDED that the Motion to Dismiss filed by Defendants Lewis Smith and Paula Smith [Doc. #31] be granted, and that all claims against them be dismissed.

This, the 26th day of March, 2015.

/s/ Joi Elizabeth Peake<br>United States Magistrate Judge